Irene **ROBINSON** et al., Plaintiffs,

v.

Walter E. **WASHINGTON** et al.,
Defendants.

**Civ. A. No. 3399–66.**

United States District Court
District of Columbia.

Nov. 18, 1968.

Joel J. Rabin, Neighborhood Legal Services Program, Washington, D. C., for plaintiffs.

Madison McCulloch, Asst. Corporation Counsel, Washington, D. C., for defendants.

MEMORANDUM AND ORDER

CORCORAN, District Judge.

This action is founded upon a complaint for declaratory judgment and injunctive relief by Irene Robinson and others of her class. The dispute grows out of the administration by the District of Columbia Welfare Department of the "Aid to Families with Dependent Children" program ("AFDC") authorized by the Social Security Act of 1935, 42 U.S.C. § 602(a) (9); 42 U.S.C. § 606(a).

The plaintiffs have moved for summary judgment and the defendants have countered with a motion to remand all proceedings to the D. C. Welfare Depart-

ment for review and further proceedings in the light of recent innovations in the D. C. welfare program following King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

## A. *Facts*

The facts essential to this decision are not in dispute. As drawn from affidavits and oral testimony, they are:

(1) The District of Columbia through the District of Columbia Welfare Department (herein Welfare Department) participates in the Federal program entitled "Aid to Families with Dependent Children" (the "AFDC" program) established by the Social Security Act of 1935, 42 U.S.C. § 602(a) (9); 42 U.S.C. § 606(a).

(2) To administer the "AFDC" program the Welfare Department promulgated a "Handbook of Public Assistance Policies and Procedures" (herein "the Handbook" which declared ineligible for assistance any mother of dependent minor children who was maintaining a continuing relationship in her home with a man who, under such regulations, might be considered as a "substitute parent." (Section EL 4.5 IV C of the Handbook.) [1]

(3) The plaintiff Irene Robinson, mother of several minor children, applied for benefits under the "AFDC" program and her application was approved February 22, 1966.

(4) On August 26, 1966 the assistance payments to the plaintiff were suspended pending a determination as to whether the plaintiff was maintaining a continuing relationship in her home with a man, not her husband.

(5) There followed several administrative proceedings and finally on December 5, 1966 the Welfare Department notified plaintiff that the assistance payments to her and her children were terminated because of her failure to meet the requirements for eligibility under the "substitute parent" rule.

(6) Others of plaintiff's class, recipients of assistance under the "AFDC" program have likewise been denied payments by the Department of Welfare pursuant to the "substitute parent" rule.

(7) The "substitute parent" rule (EL 4.5 IV C of the Handbook) is a regulation which was never adopted by the former District of Columbia Board of Commissioners as required by § 3–202(b) and § 3–220 D.C.Code (1967 ed.). On June 17, 1968 in the case of Stewart v. Washington, 301 F.Supp. 610, this Court ruled that another section of the Handbook, *viz.*, EL 13.1, adopted in the same manner as the section under scrutiny, was a regulation, was not adopted in the manner prescribed by §§ 3–202(b), 3–220 D.C.Code (1967 ed.) and consequently was invalidly promulgated.

(8) During the pendency of this suit, to wit on June 17, 1968, the Supreme Court of the United States in King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) ruled that a "substitute parent" regulation promulgated by the State of Alabama, similar to that under scrutiny, was inconsistent with Section 402(a) (9) of the Federal Social Security Act, as amended, 42 U.S.C. § 602(a) (9).

(9) Following Stewart v. Washington and King v. Smith, *supra*, and during the pendency of this litigation the following action has been taken with reference to the operation of the AFDC program in the District of Columbia.

(a) The Welfare Department has ceased to consider EL 4.5 IV C in determining eligibility of applicants for public assistance.

(b) The Welfare Department has notified, in writing, those parties who, as a result of the implementation of the "substitute parent" rule, were either refused public assistance payments or had

---

1. All references to Section EL 4.5 IV C of the Handbook are to be taken as of the date of the filing of the complaint herein.

their payments terminated in the past two years that the rule is no longer in effect and that if they are in need, they may re-apply for public assistance. Current recipients and applicants have been, or are being advised that the "substitute parent" policy is no longer in effect.

(c) On November 13, 1968 the Welfare Department instituted a policy whereby the Department will waive the repayment of sums claimed by the Department to be due the District of Columbia by reason of violations of the "substitute parent" rule.

(d) On September 27, 1968, the District of Columbia adopted a series of regulations governing hearings requested by public assistance applicants and recipients which included as § 11(c) a provision that:

" * * * When the hearing decision is favorable to the claimant, or when the Department decides in favor of the claimant prior to the hearing, the Department shall authorize corrected payments retroactively to the date the incorrect action was taken."

(e) On September 30, 1968, the United States Department of Health, Education and Welfare issued "State Letter No. 1048" to the agencies (including D. C. Department of Welfare) administering approved public assistance plans. It provided, *inter alia,* in "man-in-the-house" cases corrective payments will be made retroactive to June 17, 1968, the date of the Supreme Court decision in King v. Smith, *supra.* The letter also stated that Federal financial participation is available to states [2] electing to make corrected payments back to the date of the incorrect action if that date is earlier than the date specified. .

### B. *Decision and Order*

In light of the foregoing, the Court concludes and declares as a matter of law:

(1) That Section EL 4.5 IV C of the Handbook is in fact a regulation but that it was not adopted in the manner prescribed by D.C.Code §§ 3–202(b) and 3–220, and hence is invalidly promulgated. See Stewart v. Washington, D. C., 301 F.Supp. 610 (1968).

(2) That Section EL 4.5 IV C of the Handbook is inconsistent with Sections 402(a) (9) and 406(a) of the Federal Social Security Act as amended, 42 U.S. C. §§ 602(a) (9) and 606(a). King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

(3) That this is a class action within the meaning of Rule 23(a), (b), F.R.Civ. P.

(4) In view of the action taken by the United States Department of Health, Education and Welfare and the Welfare Department of the District of Columbia subsequent to Stewart v. Washington and King v. Smith, *supra,* to cease applying Section EL 4.5 IV C of the Handbook and otherwise to administer the AFDC program within the scope and spirit of King v. Smith, it is not necessary or appropriate to grant extraodinary injunctive relief against the District of Columbia Department of Welfare as to activities no longer being pursued. The motion of the plaintiffs for a permanent injunction is accordingly denied.

(5) The prayer of Irene Robinson for a retroactive determination of benefit payments allegedly wrongfully withheld from her through the operation of Section EL 4.5 IV C of the Handbook is referred to the Department of Welfare for its determination in the light of the applicable regulations of the United States Department of Health, Education and Welfare and the Welfare Department of the District of Columbia. To such limited extent the motion of the defendants for remand of the proceedings to the D. C. Welfare Department is granted. In all other respects it is denied.

2. The District of Columbia is a "state" for purposes herein.