**Barbara M. STEPHENSON, Appellant,**

v.

**Larry L. STEPHENSON, Appellee.**

No. 1979.

Municipal Court of Appeals for the District of Columbia.

Argued May 13, 1957.

Decided July 1, 1957.

Jacob Sheeskin, Washington, D. C., with whom Seymour Berry, Washington, D. C., was on the brief, for appellant.

No appearance for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

This is an uncontested appeal from a judgment dismissing, for lack of jurisdiction, a wife's suit for a limited divorce on the grounds of cruelty. The undisputed evidence showed that defendant, a sergeant

3. Williams v. District of Columbia, D.C.Mun.App.1957, 130 A.2d 596, and cases cited therein.

in the United States Air Force, was originally from North Carolina while plaintiff was from Virginia, in which state they were married on June 16, 1951. Thereafter, defendant was assigned to Andrews Air Base in nearby Maryland and on November 15, 1955, the couple began living in an apartment in Washington. The alleged acts of cruelty took place the following September, and on October 1, 1956, defendant left plaintiff. Her complaint was filed on November 15, 1956, exactly one year after she arrived here.

Our Code provides in part that

"No decree of nullity of marriage or divorce shall be rendered in favor of anyone who has not been a bona fide resident of the District of Columbia for at least one year next before the application therefor, * * *." [1]

As used in this statute, residence means domicile.[2] The problem, then, is whether plaintiff was domiciled in the District of Columbia for the year preceding the filing of her complaint, as required by the Code. It was conceded that plaintiff's domicile was that of defendant's during the marriage, and that she acquired a domicile of her own only at the time of separation, a mere month and a half prior to the institution of this action. The case, therefore, turns on the question of whether defendant, a serviceman originally from North Carolina and stationed in this area under military orders, became domiciled here during the period from November 15, 1955, to October 1, 1956.

The general problem of the domicile of persons who come to the District in order to enter the employ of the federal government was discussed in Sweeney v. District of Columbia, 72 App.D.C. 30, 113 F.2d 25, 129 A.L.R. 1370, certiorari denied, 1940, 310

U.S. 631, 60 S.Ct. 1082, 84 L.Ed. 1402. That case, which was concerned with the word residence as used in a tax statute, made a distinction between servicemen, elected officials and temporary employees on the one hand and the vast body of federal employees on the other, but held that all were to be governed by the usual rules with respect to change of domicile, i. e., that there is a presumption that the former domicile is retained; that a new domicile can be acquired here provided there are (1) physical presence, and (2) an intent to abandon the former domicile and remain here for an indefinite period of time; and that clear and unequivocal evidence must be offered to demonstrate such intent.

In District of Columbia v. Murphy, 1941, 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329, however, the Supreme Court, speaking generally of federal employees, stated that "* * * persons are domiciled here who live here and have no fixed and definite intent to return and make their homes where they were formerly domiciled."[3] This decision has been construed as reversing the ordinary presumption against change of domicile and in effect placing "the burden upon the individual quartered in the District to establish domicile elsewhere to escape the tax."[4]

■ It is our opinion that the principles of domicile announced in the Sweeney case apply to persons in military service stationed here, rather than the rule of the Murphy case. We reach this conclusion on the basis of the distinction drawn in the Sweeney case, namely, that persons in military service reside here as the result of orders, and not of their own volition, as contrasted with those employees of the federal government, such as the respondents in the Murphy case, who chose employment here.[5] Thus, we hold, in accordance with

1. § 16–401.

2. Rogers v. Rogers, 1942, 76 U.S.App.D.C. 297, 130 F.2d 905.

3. 314 U.S. at pages 454–455, 62 S.Ct. at page 309.

4. Beedy v. District of Columbia, 1942, 75 U.S.App.D.C. 289, 291, 126 F.2d 647, 649.

5. It should also be noted that the Court in the Murphy case was construing the word residence as used in a tax statute, and that the respondents there were at-

the general rule,[6] that a person who enters military service is presumed to retain the domicile he had at the time of his induction, but that he can acquire a new domicile here provided he satisfies the tests in the Sweeney case, described above.

In the instant case, the trial judge held that physical presence was shown, but that there was no evidence indicating an intent on the part of defendant to abandon his former domicile and establish one here. We agree. From the scanty record in this case, we can perceive virtually no evidence to overcome the presumption against change. The defendant himself did not testify. Plaintiff stated that defendant's home state was North Carolina and that he had indicated on his enlistment papers that North Carolina was his home, a factor of substantial weight in these matters.[7] Plaintiff testified that it was not *her* intention to return to North Carolina, and that *she* intended to remain here "for as long as he was to be stationed here—until he got transferred someplace else." She stated that defendant "would be stationed here permanently for three years," and that he reenlisted here. She did not know whether defendant voted in the last election or whether he paid taxes here or in any other jurisdiction.

It is true, as plaintiff argues, that the fact that defendant was not living on the base but with his family in Washington is entitled to consideration,[8] but on the entire record we must hold that the evidence is wholly insufficient to overcome the presumption that defendant has retained his North Carolina domicile. If anything, it supports the view that defendant did not intend to become domiciled here.

Affirmed.

tempting to establish a foreign domicile in order to avoid the imposition of a local tax. In the instant case we are concerned with residence as used in a divorce statute, and with a plaintiff who is endeavoring to establish a local domicile in order to secure a divorce.

6. See the annotation on this subject at 21 A.L.R.2d 1164.

7. Dennett v. Dennett, 1934, 63 App.D.C. 252, 71 F.2d 975.

8. See the cases on this point cited in the annotation referred to in note 6.