483 P.2d 293

Jack Anthony GULLO, Plaintiff-Appellant,

v.

Miriam Anne BROWN, Defendant-Appellee.

No. 9142.

Supreme Court of New Mexico.

March 29, 1971.

Hartley, Olson & Baca, Albuquerque, for plaintiff-appellant.

McAtee, Marchiondo & Michael, Pat Chowning, Albuquerque, for defendant-appellee.

## OPINION

STEPHENSON, Justice.

This declaratory judgment action was filed in the District Court of Bernalillo County seeking an adjudication that a divorce decree obtained by appellee prior to a ceremonial marriage between the parties was void, having been procured by fraud. From an adverse summary judgment, this appeal was taken.

In 1947, appellee married John J. Brown. On February 17, 1951, a decree was entered by the District Court of Bernalillo County granting appellee a divorce from Mr. Brown. Because this decree and the manner in which appellee procured it are the root of this controversy, we will summarize the surrounding circumstances.

In July, 1950, appellee, a resident of the District of Columbia, was separated from Mr. Brown. Appellant brought her to Albuquerque, where they stayed for about two weeks, at his expense, for the purpose of establishing residence, looking toward the obtaining by appellee of a divorce in New Mexico from Mr. Brown and the marriage of the parties to follow. Follow-

ing correspondence between appellee and an Albuquerque lawyer, appellee filed suit for divorce on January 15, 1951.

In mid-February, 1951, appellee traveled by air from the District of Columbia to Albuquerque, went directly from the airport to the courthouse, there conferred with her attorney, attended her hearing and procured her divorce. The decree was entered February 17, 1951, whereupon appellee returned to the District of Columbia. Appellee was never a resident of New Mexico. She testified that appellant paid for the February, 1951 travels and the legal services, which was denied by appellant, although he admitted that he knew and understood the purpose of the trip and was agreeable that appellee make it. The parties were married on April 28, 1951.

In the fall of 1960, the marriage between the parties was breaking up; they had separated; and on November 16, 1960, appellee filed suit for divorce in the Circuit Court of Fairfax County, Virginia, where they then resided.

█ At that juncture, appellee commenced advancing a contention that by reason of appellee having procured the New Mexico divorce decree by fraud, the divorce was void, and the subsequent marriage between the parties was hence void and should be annulled. This legal chimera has been pursued by appellant through trial and appellate courts in the District of Columbia, Virginia, and now in New Mexico, with uniformly unfavorable results, but with a single minded purpose and persistence that is truly remarkable. For a summary of intervening litigation between these parties which is as concise as its tangled and convoluted nature permits, we will adopt and approve the language of the District of Columbia Court of Appeals in Gullo v. Hirst, 207 A.2d 662 (D.C.App.1965) [Appellee having married Mr. Hirst in 1961]. The court said:

"The parties to this appeal were married in 1951 in the District of Columbia, and will be hereafter referred to as husband and wife. In November 1960 the wife filed suit against the husband in the Circuit Court of Fairfax County, Virginia, alleging that the parties 'were lawfully married' and seeking an absolute divorce. To this complaint the husband filed an answer which denied the allegation that the parties were lawfully married, and he also filed a 'plea for annulment of marriage,' alleging that at the time of their marriage the wife was then lawfully married to one Brown. This allegation was based on the claim that a divorce obtained by the wife from Brown in New Mexico was void for lack of jurisdiction.

"Portions of the transcript of the Virginia proceedings, included in the record, show that the circumstances of the New Mexico divorce were thoroughly inquired into by the Virginia court. At the conclusion of the trial the Virginia court on April 28, 1961, entered a final decree dismissing the husband's plea for annulment of marriage and granting the wife a divorce. The divorce was granted upon a specific finding that the parties were lawfully married in the District of Columbia.

"The husband then petitioned the Supreme Court of Appeals of Virginia for an appeal. When his petition was denied on October 10, 1961, he unsuccessfully sought a writ of certiorari from the Supreme Court of the United States.

"He then brought an action for annulment of marriage in the District of Columbia. Summary judgment went against him on the ground that the Virginia judgment was res judicata. He appealed to this court and we reversed on the ground that the trial court lacked jurisdiction because of the husband's lack of residence for the jurisdictional period.

"The husband's next move was to institute a suit in the United States District Court for the Eastern District of Virginia for declaratory relief, specifically asking the court to declare his marital status. In its memorandum opinion dismissing the action, the District Court on

September 11, 1963, ruled that the issues sought to be raised had been raised and decided in the prior proceedings in the Fairfax County Court. The husband appealed and the United States Court of Appeals for the Fourth Circuit affirmed, holding that the matter sought to be litigated in the District Court was res judicata.

"While the litigation in the Virginia federal court was pending, the husband brought the action which is now before us. His complaint for annulment of marriage raised the same issues concerning the validity of the New Mexico divorce which had been raised and litigated in the Fairfax County Court and which he had attempted to relitigate in the federal court. Despite the rulings of the District Court and the Circuit Court of Appeals that the matter was res judicata, the husband brought the present action to trial in September 1964. The trial court, after hearing, dismissed the complaint on the ground that the judgment of the Circuit Court of Fairfax County was res judicata as to all issues here raised. The husband then brought this appeal."

Obviously, the application of the doctrine of *res judicata* bars appellant from obtaining the relief that he seeks. In support of such a conclusion it must be a rare circumstance when a court may rely on opinions of two other appellate courts specifically so holding in appeals involving the identical issues between the same parties. That opportunity being available to us here, we will not let it pass. In Gullo v. Hirst, 332 F.2d 178 (4th Cir. 1964) the United States Court of Appeals, Fourth Circuit, in affirming the United States District Court for the Eastern Division of Virginia held that the matter which appellant (in that case and in this one) sought to litigate was *res judicata*. In Gullo v. Hirst, supra, the District of Columbia Court of Appeals, after the summarization of prior litigation that we have quoted, said:

"The mere recitation of the foregoing facts shows that the trial court's action was correct. No citation of authority is needed for the proposition that an issue once finally litigated by the parties in a court of competent jurisdiction cannot be relitigated by the parties in that court or in any other court. Otherwise there would be no end to litigation."

Entirely apart from the doctrine of *res judicata*, it is clear that appellant lacks standing to attack the decree in the divorce case. He was not a party to it and had no right which was affected by it at the time of its entry. deMarigny v. deMarigny, 43 So.2d 442 (Fla.1949); Mumma v. Mumma, 86 Cal.App.2d 133, 194 P.2d 24 (2d Dist. Ct.App.1948); Thomas v. Lambert, 187 Ga. 616, 1 S.E.2d 443 (1939); Kirby v. Kent, 172 Miss. 457, 160 So. 569, 99 A.L.R. 1303 (1935); Tyler v. Aspinwall, 73 Conn. 493, 47 A. 755, 54 L.R.A. 758 (1901); See generally Ferret v. Ferret, 55 N.M. 565, 237 P.2d 594 (1951).

Having held that the appellant is barred from relief both by the doctrine of *res judicata* and his want of standing to attack the divorce decree, we would ordinarily say no more regarding the merits of this case. But appellant raises one important question upon which we feel obliged to express ourselves. Appellant asserts that under our decision in Heckathorn v. Heckathorn, 77 N.M. 369, 423 P.2d 410 (1967), the divorce decree obtained in this case by the appellee was utterly void and a complete nullity, and that we are bound to so hold lest, by failure to do so, we give substance to a nullity which we said in Heckathorn we would not do.

It is true that there is a certain similarity between the facts in Heckathorn and here, with the notable differences that in Heckathorn the attack on the divorce decree was waged by one who was a party to the divorce action and, so far as the opinion shows, did not participate in procuring the decree. In Heckathorn we held that residence for the period required by statute is a jurisdictional prerequisite to divorce in New Mexico, and that if the jurisdictional prerequisite is lacking, the de-

cree is a nullity. However, we do not reach the matter of the validity of the divorce decree in question here, since appellant is barred from raising this question by both *res judicata* and lack of standing to litigate the issue. Hence, nothing we have said modifies or departs from our holding in Heckathorn.

■ Appellee suggests that we should remand the case with directions to the trial court to allow attorney's fees because of the harassment of the appellee by the appellant by means of this vexatious litigation. She correctly points out that in Gullo v. Hirst, supra, the United States Court of Appeals remanded with directions to tax attorney's fees, and that in Gullo v. Hirst, supra, the District of Columbia Court of Appeals, in order to bring an end to vexatious litigation, taxed attorney's fees against the appellant for the appellee's legal services both in the trial court and on appeal. It may be that the viewpoint of these federal appellate courts is somewhat more detached than ours, but we find it difficult to overlook the fact that it was a New Mexico court upon which fraud was practiced in securing the divorce decree. We do not intend to be understood as condoning the acts of appellee in procuring the decree. To the contrary, we take a serious view of her actions. Indeed, the long, tangled and vexatious course of litigation, including this case, could be said to stem in large measure from the fraud practiced on the District Court of Bernalillo County in 1951. For that reason her circumstances excite little sympathy, stemming as they do, at least in part, from her own wrongful acts.

Accordingly, we leave the appellee as we found her on the subject of attorney's fees.

The summary judgment of the trial court should be affirmed, and,

It is so ordered.

COMPTON, C. J., and OMAN, J., concur.